**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CATHOLIC HEALTH INITIATIVES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 07-0555 (PLF) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | **ECF** |
| Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs are a group of fifty-five hospitals and their parent organization, Catholic Health Initiatives, that participate in the Medicare program and maintain liability insurance through an offshore captive insurer. Plaintiffs have brought this action seeking judicial review of the Secretary's decision denying Medicare reimbursement to Plaintiffs for any of their insurance premium costs paid to the captive insurer for various cost reporting periods covering the years 1997-2002.

In Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and Reply in Further Support of Their Motion for Summary Judgment ("Pls.' Opp."), Plaintiffs continue to argue that: (1) their insurance premium costs are reasonable and therefore must be reimbursed pursuant to the Medicare statute and regulations; (2) the Secretary's manual provisions, which set investment thresholds that Plaintiffs exceeded, carry no weight because they are unsupported by substantial evidence; and (3) even if Plaintiffs cannot obtain reimbursement for their insurance premium costs, they are still entitled to recover the actual

costs of their paid claims. The Secretary refuted each of these arguments in his opening brief and will explain in further detail here why Plaintiffs' arguments must fail.

## ARGUMENT

### I. The Medicare Statute and Regulations Cannot Be Applied in Isolation

In their opposition brief, Plaintiffs' fundamental argument remains unchanged. Their argument is relatively simple: one must apply the bare principle that providers' reasonable costs are to be reimbursed and disregard any other guidance, even the Secretary's rules and policies that place reasonable restrictions or qualifications on this general principle. Plaintiffs therefore argue that the Secretary's valid rules, as articulated in his manual, which do not allow reimbursement for premium costs paid to an offshore captive insurer that invests greater than ten percent of assets in equity securities, are not binding on them.

Plaintiffs' argument that only the Medicare statute and regulations apply to this reimbursement dispute is an overly simplistic view of the regulatory requirements relevant to this situation. As outlined in the Secretary's opening brief, the Secretary retains vast discretion in applying the reasonable cost principles to issue guidance as to what can and cannot be considered reasonable costs. Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Mem.") at 9-16. The Secretary will not restate those arguments here. Rather, herein, the Secretary will further discuss and analyze the caselaw showing that courts give great respect, if not Chevron deference, to his judgments as to what costs are reasonable and what costs are not reasonable.

As discussed at length in the Secretary's opening brief, the Supreme Court's decision in

Guernsey Memorial Hospital v. Shalala, 514 U.S. 87 (1995), speaks directly to the matter at issue in this case because there, the Supreme Court upheld a reasonable cost principle articulated by the Secretary solely in a manual provision.  See Def.'s Mem. at 11-12, 17.  Even Plaintiffs admit, as they must, that Guernsey stands for the proposition that the Secretary can articulate principles regarding reimbursement based on what is "necessary and proper."  Pls.' Opp. at 7.  Although Plaintiffs go on to argue that Guernsey is different than the situation here because the Supreme Court found that the manual provision did not conflict with the regulation, id., the Secretary maintains that Guernsey is in fact controlling here because there is harmony between the statute, regulations and manual provision.  As outlined in the Secretary's opening brief, the manual provision is a valid interpretive rule that is consistent both with the basic statutory provision at 42 U.S.C. § 1395x(v)(1)(A) regarding reimbursement only for reasonable costs, and the Secretary's regulation at 42 C.F.R. § 413.9, which further explains that "[r]easonable cost includes all necessary and proper costs incurred in furnishing the services, subject to principles relating to specific items of revenue and cost."  See Def.'s Mem. at 15.

Similarly, in Sentara-Hampton General Hospital v. Sullivan, 980 F.2d 749 (D.C. Cir. 1992), the Court of Appeals for this circuit upheld the Secretary's application of a manual provision regarding disallowance of costs under the Secretary's funded depreciation rule.  See Def.'s Mem. at 14.  The Court found that the Secretary's rule was entitled to deference because it was in accordance with the law and not arbitrary and capricious.  Sentara-Hampton Gen. Hosp., 980 F.2d at 760.

The Court of Appeals for the Second Circuit has also recognized the importance of deferring to the Secretary's interpretations of the statute, even when those interpretations are in

the form of manual provisions, or even less formal guidance such as letters from regional administrators. Community Health Ctr. v. Wilson-Coker, 311 F.3d 132, 138 (2d Cir. 2002). Community Health Center involved the agency's interpretation of the Medicaid reimbursement statute. Id. at 136. The court determined that it owed "significant" deference to the agency's interpretation, id. at 137, and that it would "not lightly [] disrupt the informed judgments" of the agency. Id. at 138.

Some further examples of cases in which the Federal courts have deferred to the Secretary's sub-regulatory guidance regarding reasonable cost reimbursement principles and treated that guidance as supplying the rule of law to be applied include: Visiting Nurse Association Gregoria Auffant, Inc. v. Leavitt, 447 F.3d 68 (1st Cir. 2006), where the court gave deference to manual provisions regarding reimbursement for provider contributions to a deferred compensation plan; St. Mary's Hospital of Rochester, Minnesota v. Leavitt, 416 F.3d 906 (8th Cir. 2005), where the court gave deference to a letter written by an agency official requested by a fiscal intermediary regarding proper reimbursement for indirect medical education costs; and Community Hospital of the Monterey Peninsula v. Thompson, 323 F.3d 782 (9th Cir. 2003), where the court gave deference to manual provisions regarding reimbursement for providers' bad debts.

The foregoing cases show, contrary to Plaintiffs' position, that the Secretary is afforded great deference by the courts in his determinations as to what costs are deemed to be reasonable. Here, the Secretary has found that insurance premium costs paid to an offshore captive insurance company are not reasonable and proper if they are invested in greater than ten percent equities. This Court should defer to the Secretary's expertise in finding that costs that do not meet the

Secretary's stated criteria are not reasonable and proper for Medicare reimbursement purposes.[1]

## II. The Secretary's Manual Provision Is Based on Substantial Evidence and Is Not Arbitrary or Capricious

Plaintiffs next argue that the Secretary's manual provision imposing investment limitations on offshore captive insurers is not based on substantial evidence and is arbitrary and capricious. Pls.' Opp. at 11-14. In support of their position, Plaintiffs principally rely on the testimony of the agency's witness at the hearing before the Provider Reimbursement Review Board ("PRRB"). Pls.' Opp. at 12-14. In fact, Plaintiffs argue that the "critical point" is that the Secretary's witness admitted to not being a "specialist" in insurance regulation. Pls.' Opp. at 13. But this is a case about Medicare reimbursement, not insurance regulation. In fact, as should be obvious, the Secretary is in no way regulating the insurance industry, but rather is setting appropriate criteria for when costs will be reimbursed by Medicare as "reasonable and proper." The PRRB itself found that the investment restrictions "do not serve to supervise or control the business of insurance" which "would be prohibited by 42 U.S.C. § 1395." Administrative Record ("A.R.") 11. The Secretary is no more regulating the insurance industry here than he was regulating the financial dealings of health care providers in Guernsey, which dealt with the Medicare reimbursement effect of a hospital's advance refunding of debt. In both situations, the

---

[1] As shown above, Plaintiffs' apparent position – that its offshore captive insurer should be free to make whatever investment decisions it chooses unaffected by any Medicare interpretive rule that would diminish Plaintiffs' Medicare reimbursement – cannot be correct. By Plaintiffs' reasoning, their offshore captive could have chosen to invest a portion, or even all, of Plaintiffs' malpractice premiums in lottery tickets, particularly if that approach was endorsed by their own cadre of experts. Under Plaintiffs' position, a prohibition by the Secretary's manual on offshore captives' investment of malpractice insurance premiums in lottery tickets should be considered of no effect. To the contrary, Plaintiffs' choice here simply violated the necessary and proper standard set forth in 42 C.F.R. § 413.9(b)(2), as reasonably interpreted through the ten percent equities restriction specified in section 2162.2.A.4 of the Provider Reimbursement Manual.

Secretary is not regulating the business activity directly, but is instead making rules as to what the reimbursement effect of those activities will be.

Another instructive case in this regard is Sun Towers, Inc. v. Heckler, 725 F.2d 315 (5th Cir. 1984). In Sun Towers, the Secretary refused to pay the hospitals' stock maintenance costs and other business expenses incurred in the acquisitions of hospitals. Id. at 317. The court found that the providers were not entitled to payment for these costs because the costs were not sufficiently related to patient care, id. at 329-30, despite the fact that the hospitals could not have maintained their business viability without incurring these costs. Even in that situation, the court found the Secretary perfectly free to apply his duly promulgated rules to deny reimbursement.

Moreover, Plaintiffs cannot simply latch onto the testimony of one witness and conclude that the Secretary's position is without support. For example, Plaintiffs take one statement by the Secretary's witness – that she is "not a specialist" in insurance regulation or investment risk – and inflate it to try to argue that the agency does not know what the relevant factors are and did not rationally consider them. Plaintiffs make not just the error of mischaracterizing this witness's testimony, but also of focusing on only that testimony instead of the PRRB's decision, which is the Secretary's final decision that is under review by this Court.

The PRRB decision sets forth the relevant considerations, including the key consideration that "offshore captives are under the control of foreign governments and are not subject to the same level of industry regulations applied to onshore agencies by State insurance commissions." A.R. 11. Furthermore, the PRRB decision found that "the restrictions themselves are reasonable and in line with investment allocations made by domestic insurance companies." A.R. 12. The PRRB's decision carefully outlines the Secretary's consideration of this issue and the

conclusions he has reached as to why his ten percent rule is reasonable for offshore captives.

Furthermore, Plaintiffs fail to dispute in any meaningful way the substantial evidence that the Secretary has presented in support of his position that a ten percent limitation on equity investments by offshore captives is reasonable. Namely, the Secretary placed into the record evidence regarding statutes from eight States showing that they place percentage limitations on the amount of equity securities that an insurer may invest in. See Def.'s Mem. at 16-17; A.R. 5452-5535. Perhaps Plaintiffs failed to engage on this important point, in anything other than a footnote, see Pls.' Opp. at 12, n.3, because they admit that at least six States impose such limits on captive insurers. Pls.' Mem. at 23; Complaint ¶ 95. Regardless, there can be no dispute that substantial evidence exists to support the reasonableness of the Secretary's rule.

### III. Plaintiffs Cannot Recover the Costs of Their Actual Claims When They Have Not Complied With the Secretary's Rules Regarding Insurance

Plaintiffs argue that if this Court rejects their arguments for Medicare reimbursement of their insurance premiums (and it should), that they are still entitled to recover their actual costs. Pls.' Opp. at 15-16. Such an end-run around the Secretary's rules cannot be permitted, for such an exception would swallow the rule.

It would be inconsistent for a provider to have insurance that does not comply with the rules, but then be able to recover the costs of its actual claims anyway. Rather, for purposes of Medicare reimbursement, not having proper insurance is equivalent to not having insurance at all. In support of their position, Plaintiffs rely on Saint Mary of Nazareth Hospital Center v. Schweiker, 718 F.2d 459 (D.C. Cir. 1983). Pls.' Opp. at 4, 15-16. But Plaintiffs' self-serving interpretation of that case – that they have carte blanche to do as they please and the Medicare program must still always reimburse them for the costs of rendering care to Medicare patients –

is clearly unfounded. Moreover, the situation in Saint Mary is clearly distinguishable from the instant case for, as the Court of Appeals found in Saint Mary, application of the regulation at issue precluded any reimbursement for patients in hospitals' special care units under all circumstances. Saint Mary, 718 F.2d at 467. That is, there was nothing that a hospital could do to obtain reimbursement for services provided to those patients. The instant case is completely different because it was within Plaintiffs' power to arrange their insurance so as to receive Medicare reimbursement for their premium costs. Plaintiffs could have used a domestic insurance company or simply complied with the Secretary's rules for offshore captives. But Plaintiffs did not avail themselves of the other available options and their misplaced reliance on Saint Mary now does not restore their right to Medicare reimbursement to which they have never been entitled.

## IV.  There Is No Genuine Issue of Material Fact

Finally, Plaintiffs argue that there is no genuine issue of material fact. Pls.' Opp. at 16-18. On this point the Secretary is in agreement. However, the Secretary disputes Plaintiffs' legal position that although no material facts are in dispute, the particular way in which those facts are presented by Plaintiffs must be accepted by the Court.

Plaintiffs have a tendency to take undisputed facts and create characterizations, or worse, legal arguments that result in the facts being misconstrued. Such a tactic must be rejected. The Secretary did as much by responding to Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue ("Pls.' Statement"), and disputing certain of Plaintiffs' "material facts" as being more in the nature of characterizations that contained Plaintiffs' particular interpretation of the facts or, in some instances, conclusions of law. See, e.g., Defendant's

Response to Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue ¶¶ 5-7, 8, 46, 56-57, 67, 71-79, 80, 81-83, 84, 85, 86-90, 91-93, 96-98, 99, 100-03, 107-08, 109, 110, 111, 113-15.  This is all that the Secretary is obligated to do under the local rules and thus his response was completely adequate.  LCvR 7(h).  Furthermore, in instances where there may be some dispute over matters that are truly factual in nature, they do not bear on the ultimate outcome of this lawsuit and need not be definitively resolved by this Court.

  As the Secretary has pointed out, this is an Administrative Procedure Act record review case and as such, the nearly 7,000-page record filed by the Secretary contains all of the material facts necessary for a proper resolution of this case.  Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Statement") at 1.  There is certainly no dispute as to the central material facts of this case.  See Def.'s Mem. at 16.  Plaintiffs maintained their insurance in an offshore captive insurance company.  Def.'s Statement ¶ 3; Pls.' Statement ¶¶ 15, 16, 28, 32; A.R. 9, 93, 279, 5377.  Plaintiffs' offshore captive insurer maintained forty to fifty percent of its assets in equity securities during the relevant time periods.  Def.'s Statement ¶ 6; Pls.' Statement ¶¶ 52, 56; A.R. 9, 93, 279, 5377.  Medicare rules require that for insurance premiums to be reimbursable, no more than ten percent of assets in an offshore captive insurance company may be maintained in equity securities.  Provider Reimbursement Manual § 2162.2.A.4; Def.'s Statement ¶ 7; Pls.' Statement ¶ 17; A.R. 8, 93, 5377.  Beyond these undisputed facts, there is nothing in Plaintiffs' statement of material facts, or the Secretary's response thereto, that requires this Court to accept any of Plaintiffs' factual allegations as true, except the Court's own independent judgment based on its review of the record.

**CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in the Secretary's opening brief, the Secretary respectfully requests that the Court deny Plaintiffs' motion for summary judgment and grant the Secretary's motion for summary judgment.

                          Respectfully submitted,

                          /s/
                        JEFFREY A. TAYLOR
                        United States Attorney
                        D.C. Bar No. 498610

                          /s/
                        CHRISTOPHER B. HARWOOD
                        Assistant United States Attorney
                        Judiciary Center Building
                        555 4th St., N.W.
                        Washington, D.C. 20530
                        (202) 307-0372

                          /s/
                        PAUL E. SOEFFING
                        Attorney
                        D.C. Bar No. 459480
                        U.S. Department of Health and Human Services
                        Office of the General Counsel
                        Centers for Medicare & Medicaid Services Division
                        Room C2-05-23
                        7500 Security Boulevard
                        Baltimore, Maryland 21244-1850
                        410-786-1895

OF COUNSEL:

DANIEL MERON
General Counsel

CAROL J. BENNETT
Acting Associate General Counsel

MARK D. POLSTON

Deputy Associate General
   Counsel for Litigation

United States Department of
   Health and Human Services